IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AUSTEN M.-C.,[1]                                              No. 6:23-cv-01123-HZ

                        Plaintiff,                                OPINION & ORDER

            v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.

Katherine L. Eitenmiller
Mark A. Manning
WELLS, MANNING, EITENMILLER & TAYLOR, P.C.
474 Willamette Street
Eugene, Oregon 97401

            Attorneys for Plaintiff

Natalie K. Wight
United States Attorney
District of Oregon
Kevin C. Danielson
Executive Assistant U.S. Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Franco L. Becia
Special Assistant United States Attorney
Office of Program Litigation, Office 7
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Plaintiff Austen M.-C. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

       Plaintiff applied for DIB and SSI on March 29, 2021, alleging an onset date of December 1, 2019. Tr. 62.[2] Plaintiff's date last insured ("DLI") is March 31, 2021. Tr. 62. His application was denied initially and on reconsideration. Tr. 95, 104.

       On March 29, 2023, Plaintiff appeared with counsel for a telephonic hearing before an Administrative Law Judge ("ALJ"). Tr. 17. On April 17, 2023, the ALJ found Plaintiff not disabled. Tr. 14. The Appeals Council denied review. Tr. 1.

///

///

///

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on "Bipolar," "Anxiety," and "Depression." Tr. 197. At the time of his alleged onset date, he was 23 years old. Tr. 25, 61. Plaintiff has limited education and past relevant work experience as a service station attendant. Tr. 25, 198.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckier*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *yuckier*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 14-42; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date and through his date last insured. Tr. 19. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "bipolar disorder; anxiety disorder; obsessive compulsive disorder; attention-deficit hyperactivity disorder ("ADHD"); borderline personality disorder; oppositional defiant disorder; and posttraumatic stress disorder ("PTSD") [.]" Tr. 19-20. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 20. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform "a full range of work at all exertional levels" as defined in 20 C.F.R. §§ 404.1529(b) and 416.929 and SSR 16-3p with the following limitations:

> [T]he ability to understand, remember, and carry out instructions is limited to performing simple and routine tasks. Use of judgment is limited to simple work-related decisions. Interaction with supervisors, coworkers, and the general public can be done occasionally. Dealing with changes in the workplace setting would again be limited to simple work-related decisions. Time off-task, in addition to normal breaks, would be up to 5% scattered throughout a normal workday.

Tr. 21-22. Because of these limitations, the ALJ concluded that Plaintiff could not perform his

past relevant work. Tr. 25. But at step five, the ALJ found that there are jobs that exist in

significant numbers in the national economy that Plaintiff can perform, such as "Hand

Packager," "Cleaner II," and "Marking Clerk." Tr. 26. Thus, the ALJ concluded that Plaintiff is

not disabled. Tr. 26.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a

whole, including both the evidence that supports and detracts from the Commissioner's decision.

*Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is

susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."

*Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v.

Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal

quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly rejecting Plaintiff's subjective

symptom testimony; and (2) finding the medical opinion of consultative examiner Joel Yost,

D.O., unpersuasive. Tr. 22-25. Though the ALJ did not err in rejecting Dr. Yost's opinion, the Court agrees with Plaintiff that the ALJ improperly rejected his subjective symptom testimony.

I.      **Subjective Symptom Testimony**

Plaintiff argues the ALJ erred in rejecting his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff was diagnosed with Obsessive-Compulsive Disorder ("OCD"), Oppositional Defiant Disorder ("ODD"), Attention-Deficit/Hyperactivity Disorder ("ADHD"), Bipolar Disorder, Post-Traumatic Stress Disorder ("PTSD") and Social Anxiety beginning when he was in elementary school. Tr. 36-37, 552. He was diagnosed with ADHD before age nine and started on medication. Tr. 552. Plaintiff reported, "I started flipping over desks when I got mad." Tr. 552. He had conflicts with his mom, authorities at school, and friends. Tr. 552. He was frequently "kicked out" of school for his anger issues. Tr. 522. Plaintiff also reported that he received Special Education from first to ninth grade and needed an Individualized Education Plan ("IEP"). Tr. 198. He received DIB and SSI as a minor but stopped receiving benefits at the age of 18. Tr. 36, 202.

At the hearing, Plaintiff testified that although he tried to work, he could not keep a job because of anxiety and difficulty coping with his emotions. Tr. 51. He has anger issues and does not feel "in control of [his] emotions." Tr. 46. He stated, "I say something and get in trouble, either with impulsivity or, like, just general anger. I always get fired, or quit, or – it's usually two things. So it's been kind of tough." Tr. 40. He preemptively quit his job pumping gas in 2017 before he could get fired after saying something "pretty rude" to a coworker. Tr. 38-39. In 2019, he worked as a hod carrier moving "buckets of mud" for a construction company. Tr. 39. But Plaintiff quit after he fell off scaffolding because he developed a fear of heights and did not like the way his boss spoke to him. Tr. 39. His current medication helps him regulate his emotions, but he still experiences a lot of outbursts with people. Tr. 53. He has experienced a lot of side effects with different medications, so he is anxious about starting new ones. Tr. 53.

Plaintiff also testified that he does not socialize with others except for minimal voice chats with online friends. Tr. 42-43. Plaintiff explained that he does not really know how to act

normally on his own. Tr. 43. He "kind of just cop[ies] how [other people] act or what they say and what they do, because that's what [he] thinks is normal." Tr. 43. He is very self-conscious. Tr. 50. He is addicted to video games as an "escape." Tr. 44. Plaintiff stated, video games "were there for me when I was going through all this trouble[.]" Tr. 43. Plaintiff explained, "[I]t's . . . the only place I feel like I'm good at something." Tr. 44.

In his function report, Plaintiff reported that his Bipolar impacts his ability to "keep friends and jobs." Tr. 211. He spends most of his time isolated inside. Tr. 211. He wrote that on a typical day, he sleeps, watches television, plays videogames, and "not much" else. Tr. 212. He makes simple meals "4 times a week maybe." Tr. 213. He does dishes for "30 minutes like once a month," vacuums for "30 minutes like once every 3 months," and feeds his cats "sometimes." Tr. 213. He needs "multiple reminders" to perform household chores. Tr. 213. He has problems getting along with others and has been fired because of this in the past. Tr. 215, 216. He does not have a driver's license, and he travels by walking, riding in a car, or using public transportation. Tr. 214. He also reported that he was "not great" at getting along with authority figures and did not handle stress or changes in routine well. Tr. 216, 217.

The ALJ gave four reasons for rejecting Plaintiff's subjective symptom testimony: (1) Plaintiff's daily activities; (2) Plaintiff's work in construction from August 2019 to late 2019; (3) inconsistency with the objective medical evidence; and (4) improvement of Plaintiff's conditions with treatment. Tr. 22-24.

A.  Activities of Daily Living

Contradiction with a Plaintiff's activities of daily living is a clear and convincing reason for rejecting a Plaintiff's symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse

credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ found that the alleged severity of symptoms was inconsistent with Plaintiff's reported activities of daily living. Specifically, the ALJ pointed out that Plaintiff demonstrates some ability to interact with others by playing video games online with friends, housesitting for his aunt, taking public transportation, doing household chores such as vacuuming or dishes, shopping in stores and by computer, managing funds, and watching TV. Tr. 23. The ALJ added that Plaintiff can perform "simple tasks with simple work-related decisions" considering his "often intact concentration/memory, his ability to play video games, and his ability to practice driving." Tr. 24.

The ALJ's findings are not supported by substantial evidence. First, the ALJ does not explain how Plaintiff's limited interaction with friends online is inconsistent with his difficulty interacting with others in workplace settings. Plaintiff explained that he is unable to work because of his cyclical episodes of anxiety and difficulty managing his emotions. Tr. 51, 211.

Playing video games helps him avoid socializing with others and reduces his social anxiety. Tr. 43, 44. Plaintiff testified, "[I]t's like my escape." Tr. 44. Additionally, Plaintiff noted that his interactions with friends online are minimal. Tr. 43. These minimal interactions with online friends differ significantly from in-person interactions in a workplace and do not contradict the severity of Plaintiff's alleged symptoms. *See Watkins v. Comm'r, Soc. Sec. Admin.*, 3:14-CV-01753-HZ, 2016 WL 184425, at *5 (D. Or. Jan. 15, 2016) (holding that the ALJ erred in focusing on the plaintiff playing video games up to ten hours a day to conclude that the plaintiff was not seriously impaired while ignoring substantial evidence showing otherwise).

Second, the ALJ's reliance on Plaintiff's housesitting for his aunt and managing his funds as evidence that his symptoms are less severe than alleged fails for the same reason. Tr. 23. The record lacks specific details to demonstrate how these activities conflict with Plaintiff's alleged limitations. Tr. 23. Specifically, the ALJ does not explain how Plaintiff's housesitting contradicts his reported social anxiety and irritation. Tr. 23. Similarly, the ALJ does not explain how Plaintiff's ability to manage his funds conflicts with his reported cyclical mental illness. Tr. 23. Without specific details, the ALJ cannot reasonably use these activities to discount Plaintiff's symptom testimony.

Third, the ALJ's reliance on Plaintiff's ability to occasionally cook meals, complete household chores, shop in stores, go fishing, and feed the cat does not constitute substantial evidence. Tr. 23. The record shows that Plaintiff makes simple meals "4 times a week maybe." Tr. 213. He does dishes for "30 minutes like once a month," vacuums for "30 minutes like once every 3 months," and feeds his cats "sometimes." Tr. 213. Plaintiff also requires "multiple reminders" to perform these household chores. Tr. 213. Plaintiff's ability to perform occasional, simple household tasks does not reasonably conflict with his testimony that "[his] bipolar makes

it extremely hard for [him] to keep friends and jobs." Tr. 211. Accordingly, the ALJ has failed to provide substantial evidence to discredit Plaintiff's symptom testimony.

      B.  Work in Construction

The ALJ may consider work that a claimant engaged in—regardless of whether that work amounted to substantial gainful activity—in making his disability determination. SSR 96-7 (prior work and efforts to work are factors used to evaluate a claimant's credibility); *see also* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). For example, in *Bray v. Commissioner of the Social Security Administration*, the Ninth Circuit affirmed the ALJ's rejection of the plaintiff's testimony, in part because her part-time work as a personal caregiver for two years conflicted with the plaintiff's statement that she was limited in her ability to walk, lift, and carry. 554 F.3d 1219, 1226-27 (9th Cir. 2009).

Here, the ALJ found that Plaintiff's symptom testimony is inconsistent with his work in construction from August 2019 to late 2019, when Plaintiff stopped working after a fall that led to an acute, temporary elbow injury. Tr. 23. Because Plaintiff stopped working for a reason unrelated to his mental health, the ALJ concluded that this demonstrates Plaintiff is able to work despite his impairments. Tr. 23.

The ALJ's reasoning is not clear or convincing. First, the ALJ failed to recognize that Plaintiff quit his construction job after his injury in part because he did not like the way his boss spoke with him. Tr. 39. Plaintiff explained that he "got really anxious about it." Tr. 39. At the hearing, Plaintiff testified that impulsivity and anger issues prevented him from keeping jobs, he was "not great" at getting along with authority figures, and he did not handle stress or changes in

routine well. Tr. 40, 215. Thus, Plaintiff's work experience is consistent with his symptom testimony.

Second, the ALJ failed to recognize that Plaintiff's work in construction lasted only a few months, which is consistent with Plaintiff's claims of disabling cyclical mental illness. Plaintiff explained, "I always seem to screw things up; . . . either with impulsivity or, like, just general anger." Tr. 40. He similarly preemptively quit his job in 2017 after he said something "pretty rude" to a coworker. Tr. 38-39. Plaintiff's past short-term job does not undermine his testimony about the severity of his mental impairment. *See Mai V. v. Comm'r, Soc. Sec. Admin.*, 3:23-CV-00016-HZ, 2023 WL 9055493, at *6 (D. Or. Dec. 30, 2023) (holding that the ALJ erred in relying on the plaintiff's part-time work to discount her testimony about the frequency of her migraines).

C.  Inconsistency with the Record

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between a claimant's testimony and the objective medical record is a valid reason to discount their testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation conflicted with the medical record). And in some cases, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on a physical basis" by claimant's physician); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild

findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). But "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722.

The ALJ discounted Plaintiff's symptom testimony because "observations at appointments and mental status examination results" support that Plaintiff's depression and anxiety caused only moderate limitations. Tr. 23. The ALJ acknowledged that Plaintiff "presented as disheveled and poorly groomed with avoidance eye contact, abnormal demeanor, . . . worry/rumination, . . . suicide ideation . . . blunted affect," and sometimes appeared "sleepy." Tr. 23. The ALJ further acknowledged that "there have been multiple instances where irritability or anger were highlighted in treatment notes." Tr. 23. But he went on to emphasize that during the 2021 mental consultative examination, Plaintiff was punctual, cooperative, showed linear and logical thought process, and had fair judgment and insight. Tr. 23.

The ALJ erred. When taken as a whole, a single instance of positive findings in a clinical setting does not necessarily contradict Plaintiff's reported symptoms of ongoing, fluctuating mental illness. Indeed, as Plaintiff reported, he experiences "mood cycling between periods of depression and bursts of energy." Tr. 556. Additionally, Plaintiff's records before and after the consultative exam document numerous abnormal clinical observations. For example, on May 16, 2019, Plaintiff "was dressed in a heavy winter coat in spite of warm temperature outside" because "he hadn't showered[.]" Tr. 479. Similarly, on October 8, 2021, "[He] wore sweatshirt hood over his head most of the interview" and "[h]e was disheveled and unkempt," with derisive behavior, a mood described as "neutral/tired," "poor to fair" judgment, and "dull[er] and may be impaired" memory. Tr. 606-07. And on December 20, 2021, "He appeared very irritable and

labile." Tr. 553. On October 24, 2022, Plaintiff appeared disheveled, dressed in a bathrobe with

hood on his head, initially presenting with a euthymic mood but becoming angry when

discussing life goals and employment. Tr. 796. On January 3, 2023, he appeared disheveled and

sleepy and did not have age-appropriate goals for himself. Tr. 767. Therefore, Plaintiff's

subjective symptom testimony is consistent with his overall medical records of severe mental

impairments and limitations.

     D.  Improvement with Treatment

     A claimant's improvement with treatment is "an important indicator of the intensity and

persistence of . . .  symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that

can be controlled effectively with medication are not disabling for the purpose of determining

eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

2006). Symptom improvement, however, must be weighed within the context of an "overall

diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester*

*v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not

inconsistent with disability.").

     The ALJ found that Plaintiff's testimony was inconsistent with his improvement with

treatment. Tr. 22-23. The ALJ acknowledged that Plaintiff had pushed people away, lost all his

friends, and isolated himself at his home for two and a half years due to his ongoing problems

with irritability. Tr. 22. But the ALJ relied on Plaintiff's occasional reports of improvement in

therapy sessions to support his conclusion:

> He continued treatment, including individual therapy and medication management,
> with Options into mid-2022, seen at 6F. He reported doing alright and experienced
> less irritability, particularly after starting on Abilify (*See* Ex. 6F/17, 34).
> Nevertheless, more recent progress notes from Options through early 2023, seen at
> 11F, support that the claimant experiences ongoing problems with irritability,
> although he has continued to experience some benefit from Abilify and reported

that his depression and anxiety were mild/moderate or manageable (Ex. 11F/19, 31-32, 48).

Tr. 22-23. The ALJ also relied on the observation in Plaintiff's 2021 consultative exam that Plaintiff was punctual, cooperative, showed linear and logical thought process, and had fair judgment and insight to discount Plaintiff's symptom testimony. Tr. 23

The ALJ's reasoning is not clear, convincing, or supported by substantial evidence. First, the ALJ erred in focusing on occasional improvement to reject Plaintiff's allegations of disabling mental disorders. Plaintiff has experienced limitations from his mental health impairments since he was in elementary school. Tr. 36, 552. And he was diagnosed again with psychological impairments, including bipolar disorder and social anxiety disorder, in March 2019. Tr. 470-71. The records consistently demonstrate symptoms of severe depression and anxiety. For example, in April 2019, he described feeling depressed, anxious, and having low self-esteem and irritability most of the time every day. Tr. 520. And his depression and anxiety fueled a lack of self-confidence and irritability. Tr. 520. Similarly, in August 2019, Plaintiff presented as angry, frustrated, depressed, and "stuck" in his life, and he described difficulty relating to others and arguments he had with his mom and online gamers. Tr. 447, 452-53. In October 2019, Plaintiff reported that medication was not helping his temper and propensity for "outbursts." Tr. 491. In October 2021, Plaintiff reported periods of depression, including feeling hopeless, self-berating. He also expressed feeling sad or depressed most days. Tr. 608. Given the overall clinical picture of Plaintiff's severe depression and anxiety, occasional reports of improvement do not constitute substantial evidence to discount Plaintiff's subjective symptom testimony.

Further, it was an error for the ALJ to discount Plaintiff's claim of disability for the entire relevant period because of an occasional observation more than two years after Plaintiff's alleged onset date. Under the regulations, a claimant is disabled if they are unable to "engage in any

substantial gainful activity by reasons of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). As the ALJ acknowledges, Plaintiff "has chronic mental health problems dating back even prior to the period at issue, which he has sought treatment for during most of the period at issue." Tr. 22. And Plaintiff started treatment at Options starting in early 2019. Tr. 22. But the ALJ only cites records from late 2021 and early 2023 to support his findings, which are two to four years after Plaintiff's alleged onset date. Tr. 22-23. In other words, the ALJ erred in discounting Plaintiff's entire claim because of isolated observations in 2021 and 2023.

 In sum, the ALJ erred in failing to identify clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective symptom testimony.

## II. Medical Opinion Evidence

 Plaintiff argues the ALJ erred in finding the medical opinion of consultive examiner Joel Yost, D.O., unpersuasive. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

 Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2).

In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In November 2021, Dr. Yost conducted a psychological consultative examination. Tr. 532-36. Dr. Yost diagnosed Plaintiff with PTSD, social anxiety, history of ADHD, history of bipolar, history of alcohol abuse, history of ODD, and history of OCD. Tr. 535. Dr. Yost found no impairment in Plaintiff's ability to understand, retain, and follow instructions, or to sustain attention to perform simple repetitive tasks. Tr. 535. He opined that Plaintiff had a moderate impairment in his ability to relate to others, including fellow workers and supervisors, and tolerate the stress/pressure associated with day-to-day work activities. Tr. 535. Dr. Yost expressed concerns about Plaintiff "becoming even more isolated . . . in the absence of a work responsibility, but his current symptom severity likely prevents him from maintaining employment to a reasonable degree." Tr. 534-35.

The ALJ found Dr. Yost's opinion to be unpersuasive for three reasons. First, the ALJ questioned the supportability of Dr. Yost's assessment because it is internally inconsistent. The Court agrees. Though Dr. Yost concluded that Plaintiff could not maintain employment, he also found that Plaintiff was only "moderately limited." Tr. 24. Specifically, while Dr. Yost opined

Plaintiff's "current symptom severity likely prevents him from maintaining employment to a reasonable degree," Dr. Yost also concluded that Plaintiff had no impairment in understanding, retaining, and following instructions; no impairment in sustaining attention to perform simple; repetitive tasks; moderate impairment in relating to others; and moderate impairment in tolerating stress and pressures from day-to-day work activities. Tr. 535. These findings—without further explanation from Dr. Yost—reasonably conflict. The ALJ did not err in finding that Dr. Yost's opinion is less persuasive due to its internal inconsistency.

Second, the ALJ found that Dr. Yost's opinion lacks an explanation, making it difficult to assess what Dr. Yost meant when he stated that Plaintiff's symptoms prevented him from maintaining employment "to a reasonable degree." Tr. 24, 535. The Court agrees. Dr. Yost's opinion does not contain specific information regarding the extent of Plaintiff's employment capability, which makes Dr. Yost's opinion "too vague to be useful." *See Bryan Y. v. Comm'r, Soc. Sec. Admin.*, 1:23-CV-00319-HZ, 2024 WL 1508559, at *7 (D. Or. Apr. 7, 2024) (finding the ALJ was correct when he found a doctor's opinion was "too vague to be useful" because the doctor provided no information regarding what the plaintiff could still do despite his limitations). Therefore, the ALJ did not err in finding the opinion less persuasive.

Finally, the ALJ stated Dr. Yost's opinion "was inconsistent with the record as a whole[.]" Tr. 24. The ALJ relied on prior administrative medical findings and Plaintiff's work in construction from August 2019 to late 2019 to support his conclusion. Tr. 24. However, as discussed above, Plaintiff's medical records contain numerous abnormal clinical observations showing his disabling mental impairments. *See e.g*., Tr. 556. *See also* Tr. 474, 479, 482, 606-07, 796, 767. The medical findings from reviewing doctors cited by the ALJ are not substantial evidence because they highlight only a few positive instances within an overall abnormal

medical record. *See supra* Section I. Therefore, Dr. Yost's conclusion that Plaintiff is not able to sustain employment is consistent with and supported by the records.

In sum, while the ALJ's third reason for rejecting Dr. Yost's opinion is not supported by substantial evidence, the ALJ did not err in discounting Dr. Yost's medical opinion because it was internally inconsistent and vague.

## III.   Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison,* 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The ordinary remand rule is appropriate here. The ALJ erred in failing to identify clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective symptom testimony. There is ambiguity, however, as to the degree of ongoing limitations from Plaintiff's conditions, how they impact his ability to maintain employment, and

whether there are significant numbers of jobs in the national economy that Plaintiff can perform.

Accordingly, the Court remands this case for further proceedings.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED

for administrative proceedings.

IT IS SO ORDERED.

DATED:  December 19, 2024     .


MARCO A. HERNÁNDEZ
United States District Judge